# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1512

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Michael Wayne Kenney, | * | Northern District of Iowa |
| | * | |
| Appellant. | * | |

_____

Submitted: October 16, 2001

Filed: March 18, 2002

_____

Before HANSEN,[1] Chief Judge, and McMILLIAN and BEAM, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Michael Wayne Kenney appeals from a final judgment entered in the United States District Court[2] for the Northern District of Iowa sentencing him to 100 months imprisonment after pleading guilty to one count of possession of firearms as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). See United

---

[1]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

[2]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

States v. Kenney, No. 1:00CR00033-001 (N.D. Iowa Feb. 15, 2001). For reversal, Kenney argues that the district court impermissibly double counted by imposing both a two-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(4) for the firearms' status as stolen property and a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) for the burglary of the firearms. For the reasons discussed below, we affirm.

## Jurisdiction

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction in this court is proper based upon 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

## Background

The following facts are taken from the stipulations in Kenney's federal plea agreement. Kenney was a convicted felon prior to November 15, 1997, when he removed four guns from his father's home. On November 15, 1997, Kenney pawned one gun, claiming to be its owner. On November 25, 1997, Kenney pawned another gun, falsely reporting on ATF Form 4473 that he was the owner of the gun and not a convicted felon. On November 26, 1997, Randy Scott Cousins, who received the gun from Kenney, pawned a third gun and falsely reported on ATF Form 4473 that he owned the weapon and was not a convicted felon. On November 29, 1997, Kenney pawned the fourth gun, falsely claiming to be the owner.

On January 12, 1998, Kenney's parents, Darrell and Janet Kenney, reported to police Michael Kenney's forgery and theft of business checks from Darrell Kenney's barber business. While making the report, Darrell Kenney told the police that he had noticed that his guns were missing and that his son Michael had admitted taking the missing guns and pawning them. Michael had also given his father the pawn tickets,

and Darrell Kenney then retrieved the guns from the pawnshop. As a result of these actions, on April 16, 1998, Michael Kenney pled guilty to forgery and third degree burglary offenses in Iowa state court.

Kenney was separately indicted in the district court on a federal charge of possession of firearms as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On October 31, 2000, Kenney entered a guilty plea and the district court ordered the preparation of a Pre-Sentence Investigation Report ("PSR"). On February 12, 2001, Kenney filed a sentencing memorandum objecting to the PSR, which recommended a four-level sentence enhancement pursuant to U.S.S.G. § 2K2.1(b)(5), because he had already been assessed a two-level enhancement under § 2K2.1(b)(4). Subsection 2K2.1(b)(5) provides, in relevant part, that

> [i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe it would be used or possessed in connection with another felony offense, increase by 4 levels.

Subsection 2K2.1(b)(4) provides that "[i]f any firearm was stolen, or had an altered or obliterated serial number, increase by 2 levels." At sentencing on February 15, 2001, Kenney stipulated to the two-level (b)(4) enhancement because the guns were stolen. The district court also applied the recommended four-level (b)(5) enhancement on the ground that the illegally-possessed firearms were used in connection with another felony offense, namely, the burglary of those firearms from his parents' house. The district court imposed a sentence of 100 months imprisonment, a $100 special assessment, and a three-year term of supervised release.

**Discussion**

Kenney argues that the district court impermissibly double counted by imposing both a four-level enhancement under § 2K2.1(b)(5) for his participation in the burglary of the firearms and a two-level enhancement under § 2K2.1(b)(4) because the firearms were stolen property. Specifically, Kenney contends that the burglary of the firearms does not constitute "another felony offense" for purposes of applying the (b)(5) enhancement because subsection (b)(4) already fully accounts for the fact that the firearms were stolen. Kenney urges this court to adopt the reasoning of other circuit courts which classify the burglary and the fact that the firearms were stolen as essentially the same crime. See, e.g. United States v. Szakacs, 212 F.3d 344, 352 (7th Cir. 2000) (refusing to allow a (b)(5) enhancement "[b]ecause nearly every federal weapons offense could be simultaneously charged as a state crime, [so] allowing the state crime to count as 'another felony offense' renders that term superfluous; it could just as easily read 'any felony offense'"); United States v. Sanders, 162 F.3d 396, 399-401 (6th Cir. 1998) (concluding that district court erred in a factually-similar case in holding that burglary of firearms in addition to possession of stolen firearms constituted "another felony offense" warranting the (b)(5) enhancement because that factor had been accounted for already by application of the (b)(4) enhancement). We decline to adopt this interpretation of the Guidelines.

We review the district court's application of the sentencing guidelines, including the permissibility of double counting, *de novo*. United States v. Rohwedder, 243 F.3d 423, 425-26 (8th Cir. 2001); see also United States v. Amsden, 213 F.3d 1014, 1015 (8th Cir. 2000).

"Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." Rohwedder, 243 F.3d at 426-27 (citing United States v. Hipenbecker, 115 F.3d 581, 583 (8th Cir.

-4-

1997)).  Double counting may be permissible, however, in situations where (1) the Sentencing Commission intended the result and (2) "each statutory section concerns conceptually separate notions relating to sentencing."  Id.

In the present appeal, Kenney argues that the district court assessed the (b)(5) enhancement for conduct that had already been fully accounted for in the (b)(4) enhancement.  Hence, we must determine whether the alleged double counting was permissible.  In applying the Rohwedder test, we first examine whether the Commission intended the resultant double counting.

We turn to the language of the Guidelines and the Application Notes to understand whether the Commission intended both the (b)(4) and (b)(5) enhancements to apply to the facts on appeal.  See Stinson v. United States, 508 U.S. 36, 38 (1993) (determining that commentary which "interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"); United States v. Hendricks, 171 F.3d 1184, 1186 (8th Cir. 1999) (stating that "the official commentary to the guidelines must be given controlling weight unless it is plainly erroneous or inconsistent with the guidelines").  We are guided by the Application Notes to the relevant Guideline, U.S.S.G. § 2K2.1.  First, Application Note 19 states that the (b)(4) enhancement "applies whether or not the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number," thus making it clear that the mere fact that the firearm was stolen justifies application of the (b)(4) enhancement.  Second, for purposes of applying the (b)(5) enhancement, Application Note 18 specifically excludes only three types of offenses when defining "another felony offense": "offenses other than explosives or firearms possession or trafficking offenses."  In situations where the Commission consciously enumerates exclusions from the Guidelines, we may infer that it intended to disallow any exclusions not mentioned.  See United States v. Hawkins, 181 F.3d 911, 912 (8th Cir. 1998) (holding that when the guidelines explicitly disallow double counting in some

situations, it is implicit that double counting is not disallowed in other situations); see also United States v. Shepardson, 196 F.3d 306, 312 (2d Cir. 1999) (concluding that, in situations where the Commission "so painstakingly enumerat[ed] the circumstances in which [an] enhancement does not apply, [the application note] indicates that the enhancement should be imposed where those specified criteria are not met").

Because § 2K2.1 does not directly address the application of both the (b)(4) and (b)(5) enhancements, we also examine the general application instructions of the Guidelines. Normally, when calculating a sentence according to the Guidelines, "[t]he offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used." U.S.S.G. § 1B1.1, n.4. Furthermore, U.S.S.G. § 1B1.3(a) provides that a defendant's base offense level and specific offense characteristics

> shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

This expansive language indicates that the Commission intended to include enhancements for every applicable aspect of the criminal conduct, to be added together cumulatively, unless the Guidelines themselves direct otherwise.

Following that same logic, we note that the Commission did contemplate the effects of double counting on the (b)(4) enhancement in U.S.S.G. § 2K2.1, n.12, which prohibits the (b)(4) enhancement if § 2K2.1(a)(7) applies, but does not mention the impact of the (b)(5) enhancement on (b)(4). Given that the Commission clearly considered the ramifications of double counting in one instance of applying the (b)(4) enhancement, it is unlikely that it simply forgot to address the double counting

-6-

implications of the (b)(5) enhancement. We therefore conclude that the Commission communicated its intent to allow both the (b)(4) and (b)(5) enhancements to apply to the same conduct by declining to amend the Guidelines or the Application Notes to specifically prohibit such application.

Consequently, we hold that the Commission intended both subsections (b)(4) and (b)(5) to be applied to firearms possession offenses involving an additional felony offense other than possession of explosives, possession of firearms, or trafficking. In the present appeal, the (b)(4) enhancement clearly applies because the firearms were stolen. Moreover, because Kenney's burglary offense is not specifically excluded from consideration, it constitutes "another felony offense" in addition to the firearms possession offense warranting application of the (b)(5) enhancement.

However, for such double counting to be permitted, Rohwedder further requires us to consider whether each enhancement concerns conceptually separate notions. 243 F.3d at 426-27. We conclude that the subsections are conceptually separate. Subsection (b)(4) deals with the stolen nature of the firearms themselves, regardless of the possessor's knowledge of or participation in obtaining the stolen weapons. In contrast, subsection (b)(5) addresses the conduct surrounding the possession of the firearms, specifically concerning the use or possession of the firearms in connection with other prohibited conduct. We are persuaded of the conceptual differences between the two subsections: while (b)(4) punishes for mere possession, (b)(5) punishes for the participation in another felony offense. Accord United States v. Turnipseed, 159 F.3d 383 (9th Cir. 1998) (holding that assault conviction based on same underlying conduct as weapons possession charge constituted another felony offense warranting application of (b)(5) enhancement in addition to (b)(4) enhancement); United States v. Armstead, 114 F.3d 504, 512 (5th Cir. 1997) (finding that the (b)(5) enhancement, in addition to the (b)(4) enhancement, was proper "in order to appropriately sanction the state crime of

burglary in connection with [the firearms possession] offense" notwithstanding the fact that the conduct occurred contemporaneously).[3]

We are further persuaded that the two offenses are conceptually separate because it is possible to be in possession of a stolen firearm without actually having stolen it. Therefore, it makes sense that the (b)(4) enhancement accounts only for the stolen nature of the possessed firearm, not the act of stealing it. See United States v. Hawkins, 181 F.3d 911, 913 (8th Cir. 1999) (explaining that the (b)(4) enhancement accounts solely for the stolen nature of firearms, which was otherwise not taken into account by § 2K2.1).

As a result, we hold that the district court did not impermissibly double count in applying both the (b)(4) and (b)(5) sentence enhancements.

## Conclusion

For the reasons stated above, we affirm the sentence imposed by the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]We distinguish the circumstances of this case from the facts of the Seventh Circuit's decision in United States v. Szakacs, 212 F.3d 344 (7th Cir. 2000), in which the two offenses in question were a state law burglary charge and a federal conspiracy to steal firearms charge, which are essentially the same charges in different courts. Id. at 349 ("the state law offense and the federal offense were essentially the same crime"). In the present appeal, the possession offense is a different kind of crime from the state law burglary offense.

-8-